UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TOMAS RICARDO HERNANDEZ RUIZ,

      *Petitioner*,

v.                                                    Case No. 3:26-cv-1061-JEP-LLL

U.S. DEPARTMENT OF
HOMELAND SECURITY, et al.,

      *Respondents*.

_____/

## **ORDER**

Petitioner, a detainee of the United States Immigration and Customs Enforcement ("ICE"), filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2241 on April 30, 2026. (Doc. 1). Petitioner argues, among other things, that his prolonged detention violates the Fifth Amendment's Due Process Clause as the Supreme Court construed it in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (*See* Doc. 1 at 6-7). He asks the Court to order his release. (*Id.* at 7).

The Federal Respondents filed a response in opposition to the petition. (Doc. 5). According to the Federal Respondents, Petitioner has impeded his removal and thus, the Court should toll the presumptively reasonable time period. (*Id.* at 7). The Federal Respondents also provide a declaration from a deportation officer "that sets forth what [ICE] represents to be evidence of a

significant likelihood of removal in the foreseeable future." (*Id.* at 1). The Warden filed a motion to dismiss, arguing he is not a proper respondent in this case. (Doc. 4). Petitioner filed a reply and declaration. (Docs. 7, 8). Upon review of the parties' filings, the Court finds that the petition must be granted.

## I.

Petitioner, a citizen of Cuba, entered the United States on May 3, 1990. (Doc. 5 at 2). An immigration judge ordered Petitioner removed on October 8, 1999. (*Id.*). On April 12, 2006, ICE placed Petitioner on an order of supervision. (Id.). On August 15, 2025, ICE "encountered" Petitioner at a Florida prison prior to his release. (*Id.*). On September 8, 2025, ICE took custody of Petitioner. (Doc. 5-10 at 1). ICE issued to Petitioner a notice of removal to Mexico on October 27, 2025, and on January 9, 2026, and Petitioner refused to sign the notice on both occasions. (Doc. 5 at 3). On May 23, 2026, ICE revoked Petitioner's order of supervision and provided him with an informal interview on May 25, 2026. (*Id.*).

On May 26, 2026, a deportation officer authored a declaration explaining ICE's position with respect to Petitioner's likelihood of removal:

> Petitioner is the subject of a final [removal] order dated October 8, 1999. The petitioner was released from ICE custody on an [OSUP] on April 12, 2006.
>
> Petitioner is currently detained pursuant to INA § 241(a) at the Baker C.I. Petitioner has been detained pursuant to INA § 241(a) as of September 08, 2025, and issued revocation of [his OSUP]

release paperwork on May 23, 2026, and alien informal interview completed on May 25, 2026.

Petitioner's OSUP was revoked pursuant to 8 [] C.F.R. [§] 241.13(i) as there is a significant likelihood that he may be removed in the reasonably foreseeable [future]. The [Petitioner] has been nominated for the next available flight to the southwest border of the United States for removal to Mexico (3rd Country Removal).

. . . .

ICE intends to remove the [P]etitioner to Mexico pursuant to INA § 241(b)(2)(E).

The [P]etitioner will be transferred to one of the corresponding ICE field offices along the southwest border that processes third-country removals to Mexico.

On October 27, 2025, and January 09, 2026, the [P]etitioner received a Notice of Removal to Mexico and refused to sign the Notice of Removal.

The receiving ERO field office will then notify Mexico's Instituto Nacional de Migracion (INM) of the [P]etitioner's upcoming removal to Mexico.

Following INM's final acceptance, he will immediately be transported to the Customs and Border Patrol corresponding port of entry for removal to Mexico.

Each ICE field office along the southwest border that processes third-country removals to Mexico removes a varying amount each week. Removals take place from each corresponding office from once a week to several times a week.

Therefore, ICE determines that there is a significant likelihood of removal in the reasonably foreseeable future.

ICE will follow proper procedures for third-country removals for the [P]etitioner as set forth in the *Guidance Regarding Third*

*Country Removals*, issued by the [Department of Homeland Security] Secretary on March 30, 2025.

(Doc. 5-11 at 2–3).

## II.

Following an order of removal, immigration detention is governed by 8 U.S.C. § 1231. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 544 (2021) ("§ 1231 explains what to do if the alien is ordered removed."); *see also Deshati v. Noem*, No. 25-cv-15940-ESK, 2025 WL 3204227, at *2 (D.N.J. Nov. 17, 2025) ("The statute governing post-final order of removal immigration detention is 8 U.S.C. § 1231."). Pursuant to section 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Detention during the removal period is mandatory. 8 U.S.C. § 1231(a)(2)(A). "The 90-day removal period shall be extended, and the noncitizen may remain in detention, if the noncitizen (1) 'fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure' *or* (2) 'conspires or acts to prevent the alien's removal.'" *Singh v. U.S. Att'y Gen.*, 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(C)).

The Supreme Court in *Zadvydas* held that indefinite detention of aliens after a final order of removal raises serious constitutional concerns. 533 U.S. at 690–99. Once an order of removal is final, the government may continue to detain an alien only for a reasonable amount of time. *See id.* at 699–701. The

reasonableness of the detention is to be measured "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence *at the moment of removal*." *Id.* at 699 (emphasis added). The Supreme Court held that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. *Id.* at 700–01. "Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period [from section 1231(a)(1)(A)] plus 90 days thereafter." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 1052 (quoting *Zadvydas*, 533 U.S. at 701). Thus, "in order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If an alien makes these showings, then the burden shifts to the government to rebut the presumption with sufficient evidence establishing that there is a "significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Notably, *Zadvydas* claims asserted prior to the presumptively reasonable six-month period are deemed unripe and subject to dismissal without prejudice. *See Akinwale*, 287

F.3d at 1052; *see also Ramos Alvarez v. U.S. Immigr. & Customs Enf't*, No. 3:25-cv-1038, 2025 WL 2591830, at *1 (M.D. Fla. Sept. 8, 2025).

### III.

Here, Petitioner was taken into ICE custody on September 8, 2025, and he filed this case on April 30, 2026—well over six months after his re-detention. Although Petitioner had been in ICE custody longer than 180 days when this case was filed, the Federal Respondents ask the Court to toll the six-month period because Petitioner "has refused to cooperate with ICE to effectuate his removal" by "refus[ing] to sign both Notices of Removal—2025 and 2026— required to begin the process of staging Petitioner for removal." (Doc. 5 at 7).

Section 1231(a)(1)(C) permits the "removal period" to be extended "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). Courts have applied § 1231(a)(1)(C) differently when addressing a *Zadvydas* claim:

> Many courts conduct an analysis using the burden-shifting framework from *Zadvydas*, considering an alien's failure to cooperate in determining whether the alien can show "good cause" to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Other courts contend that an alien's failure to cooperate precludes an analysis under *Zadvydas* altogether. Finally, some courts find an alien's failure to cooperate or filing of litigation equitably tolls, possibly indefinitely, the six-month removal period. In fact, a couple of courts covered both

6

bases finding obstruction tolled the removal period, and in the alternative, the alien did not meet the *Zadvydas* standard.

*Glushchenko v. United States Dep't of Homeland Sec.*, 566 F. Supp. 3d 693, 705–06 (W.D. Tex. 2021) (footnotes omitted). In *Akinwale*, the Eleventh Circuit recognized that the six-month period may be tolled if the alien "'acts to prevent [his] removal'" by filing litigation "challeng[ing] issues related to his removal order and his post-removal period detention." *Akinwale*, 287 F.3d at 1052 n.4 (quoting 8 U.S.C. § 1231(a)(1)(C)). More recently, the Eleventh Circuit noted that "if the removal period was extended by operation of § 1231(a)(1)(C), then ICE can continue to detain [the petitioner] because 'the keys to [the petitioner's] freedom [are] in his pocket and [he] could likely effectuate his removal by providing the information requested,' so he 'cannot convincingly argue that there is no significant likelihood of removal.'" *Singh*, 945 F.3d at 1314 (quoting *Pelich v. Immigration & Naturalization Serv.*, 329 F.3d 1057, 1060 (9th Cir. 2003)); s*ee Vaz v. Skinner*, 634 F. App'x 778, 782 (11th Cir. 2015)[1] ("Because Petitioner is responsible for thwarting his removal, he cannot show that there is no reasonable likelihood that he will not be removed in the reasonably foreseeable future if he cooperates with DHS and voluntarily signs

---

[1] This Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when this Court finds them persuasive on a particular point. *See McNamara v. GEICO*, 30 F.4th 1055, 1060-61 (11th Cir. 2022); Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

for the travel document."); *Oladokun v. U.S. Att'y Gen.*, 479 F. App'x 895, 897 (11th Cir. 2012) ("Oladokun fails to 'provide[ ] good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future,'" because his "non-cooperation is the only barrier to his removal." (quoting *Zadvydas,* 533 U.S. at 701).

Here, the Federal Respondents have not shown that Petitioner's "failure to sign" was akin to a "refus[al] to make timely application in good faith for travel or other documents necessary" for his removal or that his "failure to sign" otherwise prevented his removal. 8 U.S.C. § 1231(a)(1)(C). The two documents that Petitioner refused to sign are notices to him about ICE's intention to remove him to Mexico, not applications for travel documents or forms that would otherwise appear to assist in his removal. (*See* Docs. 5-6, 5-7). While the Federal Respondents state that Petitioner's signature on the notices of removal is "required to begin the process of staging Petitioner for removal," (Doc. 5 at 7), they fail to provide any support for that statement. In fact, there is no indication in the record that Petitioner has signed such a notice; thus, if his signature is required to begin the process of staging him for removal, then it is even more unclear how he could have been "nominated for the next available flight to the southwest border . . . for removal to Mexico." (Doc. 5-11 at 2). Simply put, the Federal Respondents fail to support their

position. Thus, the Court finds that the presumptively reasonable six-month period of detention expired prior to Petitioner filing the petition.

The Court also finds that Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Petitioner's order of removal became final in 1999, and he was released on an OSUP on April 12, 2006. He contends that he was re-detained on September 8, 2025, and "ICE has not provided any travel documents or proof of acceptance from Cuba or any third party country" despite his prolonged detention. (Doc. 1 at 6). Petitioner has now been detained for more than nine months, yet ICE still has been unable to remove him. Thus, the burden shifts to Respondents to "respond with evidence sufficient to rebut [Petitioner's] showing." *Akinwale*, 287 F.3d at 1052. As explained below, the Federal Respondents fail to do so.

The deportation officer avers that Petitioner "has been nominated for the next available flight to the southwest border of the United States for removal to Mexico (3rd Country Removal)." (Doc. 5-11 at 2). But there is no information regarding when a potential flight may be scheduled or how often such flights are scheduled.[2] Instead, the declaration merely describes the general process

---

[2] The declaration is dated May 26, 2026—approximately one month ago—yet Petitioner remains in custody. (Doc. 5-11 at 3).

for third-country removals to Mexico—there is no specific timeline provided for Petitioner's alleged removal. Nor is there any indication about whether Mexico will provide "final acceptance" of Petitioner. (Doc. 5-11 at 2 ("Following INM's final acceptance . . . .")). Petitioner has now been in ICE custody for over nine months—more than three months longer than the presumptively reasonable period—with ICE being unable to remove him or otherwise provide more specific details on when he will be removed. *See Zadvydas*, 533 U.S. at 701 ("[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely . . . shrink[s].").

Thus, based on the evidence presented, the Court finds that the Federal Respondents have failed to show a significant likelihood that Petitioner will be removed in the reasonably foreseeable future. Therefore, Petitioner is entitled to release from detention under *Zadvydas*. However, Petitioner's release "shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3); *Zadvydas*, 533 U.S. at 699–700 (holding that when continued detention is unreasonable because removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release.").

Accordingly, it is **ORDERED**:

1. The Warden's motion to dismiss (Doc. 4) is **DENIED** for the same reasons stated in *Lanvin-Valdez v. U.S. Immigr. & Customs Enf't*, No.

10

3:26-CV-180-JEP-SJH, 2026 WL 1004569, at *2–3 (M.D. Fla. Apr. 14, 2026).

2. Petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2241 (Doc. 1) is **GRANTED** as to his *Zadvydas* claim.[3] Respondents shall release Petitioner, subject to supervision pursuant to 8 U.S.C. § 1231(a)(3), **within 24 hours** of this Order, and they shall provide Petitioner with access to a telephone to arrange transportation from the detention facility.

3. The Clerk is **DIRECTED** to enter judgment granting the petition, terminate any motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida on June 26, 2026.

_____

JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

c:
Tomas Ricardo Hernandez Ruiz
Counsel of Record

---

[3] Because the Court grants relief on Petitioner's *Zadvydas* claim, the Court need not address Petitioner's other claims. *See Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004) (declining to address an additional claim in a habeas petition after granting relief on another claim because "any relief [petitioner] could obtain on that claim would be cumulative").

11